# Exhibit A

# Normandy Lane LLC
6817 Pourchot Place, Plano, TX 75024

*Email:* cvogt05@icloud.com
*Phone:* (214) 392-1010

Michelle H. Chow

Chapter 7 Bankruptcy Trustee for DZS Inc.; DZS Services Inc.; and DZS California Inc.

16200 Addison Road, Suite 140
Addison, Texas 75001

April 3, 2025

Dear Ms. Chow,

This letter agreement (this "**Agreement**") sets forth the terms and conditions whereby Michelle H. Chow, solely in her capacity as the Chapter 7 Bankruptcy Trustee ("**Trustee**") for DZS Inc. ("**Debtor**" or "**DZS**"), Case No. 25-40712, and DZS' debtor affiliates, DZS Services Inc. ("**DZS Services**"), Case No. 25-40713, and DZS California Inc. ("**DZS California**;" Debtor, DZS Services, and DZS California are collectively "**Debtors**"), Cause No. 25-40714 (the bankruptcy cases for the Debtors administered by the Trustee are referred to as the "**Bankruptcy Estate**"), all pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division ("**Bankruptcy Court**") (the "**Client**"), agrees to engage Normandy Lane LLC, a Texas Limited Liability Company (the "**Consultant**") to provide certain services (as described in *Schedule 1*).

**1.   SERVICES.**

1.1   The Client (any reference to Client in this Agreement necessarily includes the Bankruptcy Estate) hereby engages Consultant, and Consultant hereby accepts such engagement, as an independent contractor to provide certain Services (defined below) to the Client on the terms and conditions set forth in this Agreement.

1.2   Consultant shall provide to the Client with the services set forth on *Schedule 1* (the "**Services**").  The scope of the Services may only be amended by the parties in writing.

1.3   The Client does not and shall not control or direct the manner or means by which Consultant or Consultant's employees or contractors perform the Services, including but not limited to the time and place Consultant perform the Services.  Notwithstanding the foregoing, Consultant will perform Services consistent with any Bankruptcy Court orders and in a diligent, trustworthy business like and lawful manner.

1.4   As set forth in *Schedule 1*, the Client shall provide Consultant with access to all materials, information, and systems in Client's actual possession and control requested by Consultant in writing, to the extent necessary for the performance of the Services. Unless otherwise specified in Schedule 1, the Consultant shall furnish, at Consultant's own expense, the materials, equipment, and other resources necessary to perform the Services.

1.5     Consultant shall comply with all rules and procedures communicated to Consultant in writing by the Client, including those related to safety, security, and confidentiality.

**2.     TERM.** The term of this Agreement shall commence on March 17, 2025, and shall continue until the Services are completed, unless earlier terminated in accordance with Section 10 (the "**Term**").

**3.     FEES AND EXPENSES.**

3.1     As full compensation for the Services and the rights granted to the Client in this Agreement, the Bankruptcy Estate shall pay Consultant the fees as described in *Schedule 1* (the "**Fees**"), payable on completion of the Services, and closing and funding of the sale of certain of the Assets (defined below) of the Bankruptcy Estate described on *Schedule 1*. Client will issue Consultant an IRS Form 1099 and/or other appropriate documentation reflecting all Fees paid pursuant to this Agreement.  Consultant shall be solely responsible for all federal, state, and local taxes, and any obligations relating to amounts paid by the Bankruptcy Estate to Consultant.  Notwithstanding anything in this Agreement to the contrary, Consultant understands that the payment of any Fees and reimbursable expenses will only be made out of funds received by the Trustee from the sale of the Assets, and upon approval by the Bankruptcy Court.

3.2     Subject to Bankruptcy Court approval, Client shall reimburse Consultant for all reasonable travel or other out of pocket expenses incurred by Consultant in connection with the performance of the Services, which are approved in writing in advance by the Client.

3.3     The Client shall pay all undisputed Fees when and in the manner approved by the Bankruptcy Court.

**4.     RELATIONSHIP OF THE PARTIES.**

4.1     Consultant is an independent contractor of the Client, and this Agreement shall not be construed to create any association, partnership, joint venture, employment, or agency relationship between Consultant and the Client for any purpose. Consultant shall have no authority to bind the Client, the Trustee, or the Bankruptcy Estate, and Consultant shall not make any agreements or representations on behalf of the Client, the Trustee, or the Bankruptcy Estate without the Client's prior written consent.

4.2     Without limiting Section 4.1, and only for the sake of completeness, Consultant will not be eligible to participate in any vacation, group medical or life insurance, disability, profit sharing, or retirement benefits or any other fringe benefits or benefit plans offered by the Client to its employees, and the Client will not be responsible for withholding or paying any income, payroll, Social Security, or other federal, state, or local taxes, making any insurance contributions, including for unemployment or disability, or obtaining workers' compensation insurance on Consultant's behalf. Consultant shall be responsible for, all such taxes or contributions, including penalties and interest. Any persons employed or engaged by Consultant in connection with the performance of the Services shall be employees or contractors of the Consultant and Consultant shall be fully responsible for all such employees and contractors, and shall ensure all such employees and contractors comply with the terms of this Agreement.  Consultant will indemnify the Client for the actions and/or inactions of the Consultant's employees and contractors.

## 5. INTELLECTUAL PROPERTY RIGHTS.

5.1 All documents, work product, and other materials that are specifically created for Client, whether delivered under this Agreement or described in *Schedule 1* or not (collectively, the "**Deliverables**") shall be owned by the Client. Any general know-how, methodologies, processes, technologies, or algorithms used or developed by Consultant in connection with the Services shall remain the sole property of Consultant.

5.2 Consultant's pre-existing materials not owned by the Trustee and/or the Bankruptcy Estate will remain, the sole and exclusive property of Consultant and Consultant shall maintain all right, title, and interest in and to any documents, specifications, data, know-how, methodologies, software, and other materials provided to Client by the Consultant ("**Consultant Materials**").  Consultant hereby provides Client with a non-transferable, non-exclusive, royalty-free license to use the Consultant Materials to the extent that such materials are incorporated in or combined with any Deliverable or otherwise necessary for the use of any work product.

5.3 Client's pre-existing materials will remain, the sole and exclusive property of Client and Client shall maintain all right, title, and interest in and to any documents, specifications, data, know-how, methodologies, software, and other materials provided to Consultant by the Client ("**Client Materials**").  Client hereby provides the Consultant with a non-transferable, non-exclusive, royalty-free license to use the Client Materials to the extent that such materials are required to provide the Services or are incorporated in or combined with any Deliverable or otherwise necessary for the use or creation of any work product.

5.4 Consultant shall require each of Consultant's employees and contractors to execute written agreements containing obligations of confidentiality and non-use and assignment of inventions and other work product consistent with the provisions of this Agreement prior to such employee or contractor providing any Services under this Agreement.

## 6. CONFIDENTIALITY.

6.1 Prior to and during the Term of this Agreement, Consultant has and will have access to information that is considered as confidential and proprietary by the Client, including, without limitation, trade secrets, technology, and information pertaining to assets, customers, vendors, potential purchases, and financial information related to the business of the Debtors', including those described on Schedule 1 in each case whether spoken, written, printed, electronic, or in any other form or medium (collectively, the "**Confidential Information**"). Any Confidential Information that Consultant accesses or develops in connection with the Services, including but not limited to any work product, shall be subject to the terms and conditions of this clause. Consultant agrees to treat all Confidential Information as strictly confidential, not to disclose Confidential Information or permit it to be disclosed, in whole or part, to any third party without the prior written consent of the Client in each instance, and not to use any Confidential Information for any purpose except as required in the performance of the Services.

6.2 Confidential Information shall not include information that:

(a) is or becomes generally available to the public other than through Consultant's and/or any of its agents' breach of this Agreement; or

(b) is communicated to Consultant by a third party that had no confidentiality obligations with respect to such information.

6.3 Nothing herein shall:

(a) be construed to prevent disclosure of Confidential Information as may be required by applicable law, or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order; or

(b) prohibit or restrict Consultant from initiating communications directly with, responding to an inquiry from, providing testimony before, or otherwise participating in any investigation or proceeding conducted by the Securities and Exchange Commission (SEC), the Financial Industry Regulatory Authority (FINRA), any other self-regulatory organization, or any other federal or state regulatory authority regarding possible securities law violations without the need for permission from or notice to the Client.

**7. REPRESENTATIONS AND WARRANTIES.**

7.1 Consultant represents and warrants to the Client that:

(a) Consultant has the right to enter into this Agreement, to grant the rights granted herein and to perform fully all of Consultant's obligations in this Agreement;

(b) Consultant's performance of the Services do not and will not conflict with or result in any breach or default under any other agreement to which Consultant is subject;

(c) Consultant has the required skills, experience, and qualifications to perform the Services, Consultant shall perform the Services in a professional and workmanlike manner in accordance with generally recognized industry standards for similar services and Consultant shall devote sufficient resources to ensure that the Services are performed in a timely and reliable manner;

(d) Consultant shall perform the Services in compliance with all applicable federal, state, and local laws and regulations; and

(e) The individual executing this Agreement on behalf of Consultant has the authority to do so.

**8.    INDEMNIFICATION.**

8.1    The Consultant shall defend, indemnify, and hold harmless the Client, the Bankruptcy Estate and their respective affiliates, officers, directors, employees, agents, successors, and assigns from and against all losses, damages, liabilities, deficiencies, actions, judgments, interest, awards, penalties, fines, costs, or expenses of whatever kind (including reasonable attorneys' fees) arising out of or resulting from:

(a)    bodily injury, death of any person or damage to real or tangible, personal property resulting from the acts or omissions of Consultant or its affiliates, officers, directors, employees, agents, contractors, subcontractors, and assigns ("**Representatives**"), in the course of performing the obligations set forth in this Agreement;

(b)    negligence, gross negligence, willful misconduct, or fraud committed by Consultant or its Representatives in the course of performing the obligations set forth in this Agreement; or

(c)    a breach by Consultant or its Representatives of the Agreement.

**9.    TERMINATION.**

9.1    Consultant or the Client may terminate this Agreement without cause upon 10 calendar days' written notice to the other party to this Agreement. In the event of termination pursuant to this clause by Client, the Consultant may make a written application to the Bankruptcy Court for payment on a pro-rata basis of Fees for any Services completed up to and including the date of such termination, only if and when the sale of the Assets closes and funds with any award of such Fees, subject to Bankruptcy Court approval.  In the event of termination pursuant to this clause by Consultant, any claim for Fees and/or other expenses are waived by Consultant.

9.2    Consultant or the Client may terminate this Agreement, effective immediately upon written notice to the other party to this Agreement, if the other party materially breaches this Agreement, and such breach is incapable of cure, or with respect to a material breach capable of cure, the other party does not cure such breach within 5 calendar days after receipt of written notice of such breach.  If Client terminates for cause, Consultant will receive no Fees or expenses.

9.3    Upon expiration or termination of this Agreement for any reason, or at any other time upon the Client's written request, Consultant shall promptly:

(a)    deliver to the Client all Deliverables (whether complete or incomplete) and all materials, equipment, and other property provided for Consultant's use by the Client;

(b)    deliver to the Client all tangible documents and other media, including any copies, containing, reflecting, incorporating or based on the Confidential Information;

(c)     permanently delete all Confidential Information stored electronically in any form, including on computer systems, networks, and devices such as cell phones; and

(d)     certify in writing to the Client that Consultant has complied with the requirements of this clause.

9.4 The terms and conditions of this clause and Section 3, Section 4, Section 5, Section 6, Section 8, Section 9, Section 11, Section 12, and Section 13, shall survive the expiration or termination of this Agreement.

**10.  OTHER BUSINESS ACTIVITIES.** Consultant may be engaged or employed in any other business, trade, profession, or other activity which does not place Consultant in a conflict of interest with the Client or the Services to be provided hereunder.

**11.  ASSIGNMENT.** Neither party shall not assign any rights, or delegate or subcontract any obligations, under this Agreement without the other party's prior written consent. Any assignment in violation of the foregoing shall be deemed null and void. Subject to the limits on assignment stated above, this Agreement will inure to the benefit of, be binding on, and be enforceable against each of the Parties hereto and their respective successors and assigns.

**12.  GOVERNING LAW, JURISDICTION, VENUE, AND ADDITIONAL MATERIAL TERMS.** See Schedule 2 which is incorporated herein by reference for all purposes.  To the extent the terms and conditions of Schedule 2 conflict with the other terms of this Agreement, the terms of Schedule 2 will control.

**13.  MISCELLANEOUS.**

13.1   Consultant shall not export, directly or indirectly, any technical data acquired from the Client, or any products utilizing any such data, to any country in violation of any applicable export laws or regulations.

13.2   All notices, requests, consents, claims, demands, waivers, and other communications hereunder (each, a "**Notice**") shall be in writing and addressed to the parties as follows:

| Trustee: | With a copy to: |
|---|---|
| Michelle H. Chow | Michelle Shriro |
| 16200 Addison Road, Suite 140 | Singer & Levick, P.C. |
| Addison, Texas 75001 | 16200 Addison Road, Suite 140 |
| Phone:  972-380-5533 | Phone:  972-380-5533 |
| E-Mail:  mhchow@swbell.net | Addison, Texas 75001 |
|  | E-Mail:  mshriro@singerlevick.com |

Consultant:

Normandy Lane LLC

6817 Pourchot Place

Plano, TX 75024

Phone:    214-392-1010

E-Mail:    charlie@normandy-lane.com

All Notices shall be delivered by personal delivery, nationally recognized overnight courier (with all fees prepaid), email with confirmed receipt or certified or registered mail (in each case, return receipt requested, postage prepaid). Except as otherwise provided in this Agreement, a Notice is effective only if the party giving the Notice has complied with the requirements of this Section.

13.3   This Agreement, together with any other documents incorporated herein by reference and related exhibits and schedules, constitutes the sole and entire agreement of the Parties to this Agreement with respect to the subject matter contained herein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to such subject matter.

13.4   This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each party hereto, and any of the terms thereof may be waived only by a written document signed by each party to this Agreement or, in the case of waiver, by the party or parties waiving compliance.

13.5   If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

13.6   This Agreement may be executed in multiple counterparts and by electronic [or facsimile] signature, each of which shall be deemed an original and all of which together shall constitute one instrument.

**Normandy Lane LLC**

**BY:**         /s/  Charles Vogt         

**Charles Vogt, Sole Member  ACCEPTED AND AGREED:**


**Michelle H. Chow**

**Chapter 7 Bankruptcy Trustee for DZS, Inc.; DZS Services Inc.; and DZS California Inc.**

         /s/  Michelle H. Chow, Trustee         

**Michelle H. Chow, Trustee**

**Normandy Lane LLC Consulting Agreement**

7 | P a g e

# SCHEDULE 1

1. **"SERVICES"**: Organize, develop, manage, and provide all necessary information relating to the sale and associated due diligence of certain specifically identified Debtor technology, lab, IT systems and inventory to be provided to prospective purchasers, and specifically described in an Asset Purchase Agreement ("**Assets**").

2. **ACCESS PROVIDED BY CLIENT**: Access to the systems, material and pertinent information in Client's actual custody and control to perform consulting duties.

3. **"DELIVERABLES":** Consultant to provide the necessary information, materials, expertise, relationships, interaction with potential purchasers, compilation of data, meetings, communications, knowledge and resources (including people) to perform and facilitate the sale of the Assets.

4. **"FEES":** 1% of the total cash receipts actually received by Client for the sale of the Assets The fee shall be calculated based on the final sale price of such assets as approved by the Trustee and the Bankruptcy Court. Payment will be made in the time and manner dictated by the Bankruptcy Court.

# Normandy Lane LLC Consulting Agreement

## SCHEDULE 2

1. Any reference to Trustee, Michelle H. Chow, means Michelle H. Chow, as Chapter 7 Trustee for the Bankruptcy Estate presently pending in the Bankruptcy Court.
2. Michelle H. Chow is executing the Agreement solely in her capacity as the Trustee for the Bankruptcy Estate, and has no individual responsibilities and/or obligations, except as expressly provided in the UNITED STATES BANKRUPTCY CODE.
3. The Agreement and the sale of the Assets are subject to approval by the Bankruptcy Court, and the entry of an Order signed by the Bankruptcy Court and approved as to substance and form by the Trustee approving the sale. Consultant acknowledges that this Agreement and/or the sale of the Assets may be disapproved by the Bankruptcy Court.
4. Any Fees, costs, and expenses that the Trustee on behalf of the Bankruptcy Estate is responsible for will only be paid upon closing of the sale of the Assets, and funded out of funds received at closing of such sale.
5. The Trustee, on behalf of the Bankruptcy Estate, will use reasonable efforts to obtain from the Bankruptcy Court an order authoring this Agreement, and directing the sale of the Assets free and clear of any and all liens, claims, and encumbrances.
6. The Agreement and any disputes arising thereunder are subject to the exclusive jurisdiction of the Bankruptcy Court.
7. Venue for any disputes arising under the Agreement is in the Bankruptcy Court.
8. Closing of the sale of the Assets and this Agreement are dependent upon the Bankruptcy Court having entered an Order approving this Agreement, and authorizing and directing the sale of the Assets free and clear of any and all liens, claims or interests of the Bankruptcy Estate and any entity other than the said Bankruptcy Estate, pursuant to Section 363 and any other relevant provisions of the BANKRUPTCY CODE.
9. Defined terms contained in this Schedule 2 are identical to those in the Agreement unless expressly set forth herein.