**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO. 25-40712 | |
| DZS INC., § | | |
| § | (Chapter 7) | |
| DEBTOR. § | | |

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO. 25-40713 | |
| DZS SERVICES INC., § | | |
| § | (Chapter 7) | |
| DEBTOR. § | | |

| | | |
|---|---|---|
| IN RE: § | | |
| § | CASE NO. 25-40714 | |
| DZS CALIFORNIA INC., § | | |
| § | (Chapter 7) | |
| DEBTOR. § | | |

**TRUSTEE'S MOTION FOR AN ORDER APPROVING SALE OF
CERTAIN PROPERTY OF THE ESTATE FREE AND CLEAR OF
ALL LIENS, CLAIMS AND ENCUMBRANCES AND ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND LEASES**

> **THIS MATTER HAS BEEN SET FOR HEARING ON APRIL 28, 2025 at 1:30 PM (CT).**
>
> YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN THIS PLEADING. YOU SHOULD READ THIS PLEADING CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE THE RELIEF SOUGHT BY THIS PLEADING, YOU **MUST** FILE A WRITTEN OBJECTION, EXPLAINING THE FACTUAL AND/OR LEGAL BASIS FOR OPPOSING THE RELIEF.
>
> NO HEARING WILL BE CONDUCTED ON THIS PLEADING UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING *WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE* SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.

> **IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.**
>
> **IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

**COMES NOW**, Michelle H. Chow, the Chapter 7 Trustee in the above-referenced Chapter 7 case, by and through her counsel Singer & Levick, P.C., and files *Trustee's Motion for an Order Approving Sale of Certain Property of the Estate Free and Clear of all Liens, Claims and Encumbrances and Assumption and Assignment of Executory Contracts and Leases* and, in support of same, would respectfully show the Court as follows:

### I.

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 363 and 28 U.S.C. § 1334. This matter concerns the sale of property of the Estate; accordingly, this is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Additionally, the relief requested herein is authorized under 11 U.S.C. §§ 105, 365 and 541, as well as Bankruptcy Rule 9019(a).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.

### FACTUAL AND PROCEDURAL BACKGROUND

3. On March 14, 2025 ("**Petition Date**"), DZS Inc., DZS Services, LLC and DZS California, LLC. (collectively, the "**Debtor**") each filed their Voluntary Petitions under Chapter 7 of Title 11 of the UNITED STATES CODE ("**Bankruptcy Code**") commencing the above-captioned case

("**Bankruptcy Case**"). Simultaneously with the filing of its Petition, the Debtor also filed its Schedules and Statement of Financial Affairs.

4. Michelle H. Chow is the duly appointed Chapter 7 Trustee ("**Trustee**") for the bankruptcy Estates of DZS ("**DZS Estate**"), DZS Services ("**DZS Services Estate**") and DZS California ("**DZS California Estate**") (and collectively the "**Estates**"). Prior to the Petition Date, Debtor was a large publicly traded telecom business which developed hardware and software systems enabling broadband usage. As a telecom company, Debtor provided a complex array of products for use in the broadband industry. As set forth in its Schedules, Debtor has a significant portfolio of assets consisting of inventory, equipment, receivables, customer contracts and patents and other intellectual property ("**Assets**"), which the Debtor valued on its Schedules as being worth millions of dollars. In addition, the Assets are located across the country and Debtor had assets and subsidiaries, which are not in bankruptcy, around the world. This Bankruptcy Case is far from typical in both in terms of the size of the case and the complexity of the Assets involved.

5. Since her appointment, the Trustee has retained both general counsel and special counsel, as well as one of the Debtor's former officers, to assist with the sale and immediately began investigating the Assets and their value. The Trustee was contacted early on by various companies who were interested in buying the Assets. In the first few days of the case, one buyer, Managed Network Systems Inc. or its assigns ("**Purchaser**") came forward with a substantial proposal for the purchase of the Assets. The Trustee and her counsel began working literally around the clock with the Purchaser to reach mutually acceptable terms for a sale of the Debtor's Assets.

6. Although the case has only been on file for three weeks, the Trustee has entered into a Letter of Intent ("**LOI**") with the Purchaser to buy substantially all of the Assets of the Estate for a purchase price of Eighteen Million Dollars ($18,000,000.00) ("**Purchase Price**"), plus payment of

what are anticipated to be significant cure amounts related to multiple executory contracts and leases which will be assumed. A true and correct copy of the LOI is attached hereto as **Exhibit A**, and incorporated herein by reference. The parties are working on an Asset Purchase Agreement ("**APA**") and the Trustee expects to file it at least seven (7) days before any hearing in connection with the sale of the Assets. Notably, this is a cash offer -- not subject to any financing contingencies. The Purchaser is also willing to close quickly with the goal of providing employment to many of the former employees both here and in other countries. The Purchaser's affiliate, MNSi Telecom, is a Canadian internet services provider and is a long-time customer of the Debtor's products. Since a few days into the case, Purchaser has worked constantly to pursue its offer -- assembling a dedicated team of personnel, including counsel. The Purchaser sent its team of several people to North Texas to work on due diligence, meet with former personnel of the Debtor and even toured Debtor's former headquarters in Plano, Texas. **The Purchaser has put substantial time and resources into its offer and the Trustee believes it is a serious bidder with the resources necessary to close the transaction.** In addition, Purchaser has provided a deposit of $1 Million Dollars ($1,000,000.00) ("**Deposit**") which was remitted to the Trustee contemporaneously with the signing of the LOI. The negotiations for the purchase of the Assets have been at arms' length and the Purchaser is a good faith purchaser and will be seeking the protections as provided in Section 363(m) of the BANKRUPTCY CODE. By the filing of this Motion, the Trustee seeks approval of the sale of the Estates' right, title and interest in the Assets to the Purchaser pursuant to Section 363(f) of the BANKRUPTCY CODE free and clear of any liens, claims, interests and encumbrances subject to higher and better offers. Any liens will attach to the proceeds of the sale. The Trustee is offering to sell the Assets on an "as is, where is" and "with all faults" basis with no representations or warranties of any kind, nature or description by the Trustee, her agents, or the Debtor's Estates. The Trustee believes that the terms of the sale

contained in the LOI (to be memorialized in an APA) present a substantial offer and is currently the highest and best offer that she has for the Assets. The filing of this Motion should allow the Estates to receive the highest and best price for the Assets as this offer will be presented to the Bankruptcy Court for approval subject to any higher and better bids.

7. Time is of the essence in order to maximize the value of the business. Much of the value of the business is in customer contracts and a continuing inability to provide assurances to customers, the more likely that the customers will migrate to new providers. In addition, Purchaser is interested in hiring many of the former employees who may accept other opportunities. Further, landlords and other creditors of non-debtor entities are or will begin to take actions including termination of leases. As those have not initiated bankruptcy proceedings in the United States, there is little if anything the Trustee can do to preserve value. There is concern that much of the value will be lost if a sale is not consummated in short order and specifically by the end of April 2025. In addition to the Purchaser, a number of the other potential buyers have indicated that they will only be interested in a purchase to the extent that a sale is completed fairly quickly. In order to preserve and maximize value, the Trustee requests that the Court conduct a hearing before the end of April, which would allow the sale to close by the end of April 2025 if possible. It is the Trustee's understanding that, prior to the Petition Date, the Assets were marketed so many of the potential buyers are aware of the Assets. An expedited sale process is in the best interests of the Estates and its creditors. The Trustee proposes that any parties with a higher offer should make the offer no later than 5:00 PM on Wednesday, April 23, 2025 on the same terms and conditions as the LOI and the APA. Any such higher offer(s) should be sent via electronic mail to counsel for the Trustee: (a) Michelle E. Shriro (mshriro@singerlevick.com), (b) Larry A. Levick (levick@singerlevick.com) and (c) Shauna Martin (smartin@grablemartin.com)

and counsel for Purchaser (a) Deborah Williamson (dwilliamson@dykema.com), (b) Curtis Cusinato (CusinatoC@bennettjones.com) and (c) Willhelm Liebmann (wliebmann@dykema.com).

8. The Trustee believes that filing this Motion to seek the approval of the sale of the Assets to the Purchaser subject to an overbid process will allow the Trustee to maximize the value of the Assets. Although the case has only been pending a few short weeks, the Trustee has made significant efforts to obtain the highest price for the Assets to move this process forward in the most expeditious manner. To that end, in the first few weeks after the Petition Date, the Trustee retained both general and special counsel with experience in matters of this type. The Trustee has established a data room for the potential bidders who have been allowed to access the data room after the execution of a confidentiality agreement. As of the date of the filing of this Motion, over thirty (30) parties have executed confidentiality agreements.

9. In addition, the proposed Purchase Price of $18 Million Dollars, plus cure amounts, is in excess of the amount owed to the secured lender, EdgeCo. LLC ("**EdgeCo**"). Prior to the Petition Date, the Debtor entered into a lending arrangement with EdgeCo. According to the Debtor's Schedules, EdgeCo is owed a little in excess of Twelve Million Dollars ($12,000,000.00). However, EdgeCo is asserting that its payoff exceeds Fifteen Million Dollars ($15,000,000.00) with interest and a prepayment penalty. In addition, JPMorgan Chase ("**Chase**") is also listed as a secured creditor, but Debtor does not believe that Chase is owed anything. In addition, there are taxing authorities that may be owed some amounts. Although the Trustee is still reviewing the loan documents of EdgeCo and evaluating the amounts owed, the amount of the offer is in excess of the amounts claimed by the secured creditor under any circumstances. Any liens will attach to the proceeds at closing. In addition, at closing, pursuant to Sections 363 and 365 of the BANKRUPTCY CODE, with respect to payments made either directly by or on behalf of the Trustee to secured creditors, contract

counterparties for cure amounts or any other party being paid as part of the closing, the Trustee will be seeking her statutory commission pursuant to Section 326 of the BANKRUPTCY CODE.

### The Proposed Sale and Assumption and Assignment of Contracts

10. Pursuant to this Motion, the Trustee proposes to sell to the Purchaser or the highest bidder all of the Estate's right, title and interest in the Assets as set forth in the LOI (and APA), and that such sale will be free and clear of any liens, claims and encumbrances of any kind or any nature whatsoever subject to any permitted encumbrances as set forth in the LOI (and APA). The Trustee is selling the Assets on an "as is, where is" and "with all faults" basis with no representations or warranties of any kind, nature or description by the Trustee, her agents, or the Debtor's Estate. The Purchaser's offer is for substantially all of the Assets for a Purchase Price of $18,000,000.00, plus the cure amounts owed for the executory contracts and leases that will be assumed by the Trustee and assigned to the Purchaser. The Purchaser is an affiliate of MNSi, a leading telecom company out of Canada, which has substantial experience with matters of this type and appears to be ready, willing and able to close. This is a cash offer -- not subject to any financing contingencies. Although it is early in this Bankruptcy Case, this is the highest and best offer for the Assets and is in the best interest of the state. As set forth in the LOI, the offer includes the Estate's right, title and interest in the following Assets to the extent assignable:

(i) all rights, title, interests, benefits, and entitlements of and under all customer, supplier, and service contracts of DZS designated by the Purchaser in its sole and absolute discretion ("**Assigned Contracts**") for assumption and assignment PURSUANT to 11 U.S.C. § 101 ("**BANKRUPTCY CODE**");

(ii) all intellectual property of DZS, including, without limitation, patents, copyrights, trademarks, trade secrets, domain names and websites, software

    and digital assets, social media platforms, trade show assets, telephone and facsimile numbers, and any and all applications and registrations for intellectual property;

(iii) all intellectual property of DZS licensed to DZS and designated by Purchaser in its sole and absolute discretion for assumption and assignment pursuant to the BANKRUPTCY CODE (the "Assigned Licensed IP");

(iv) all rights, title, interests, benefits, and entitlements of and under any leases or other agreements relating to real property of DZS designated by Purchaser in its sole and absolute discretion for assumption and assignment pursuant to the BANKRUPTCY CODE ("**Assigned Real Property Leases**");

(v) all rights, title, interests, benefits, and entitlements of and under any leases or other agreements relating to equipment or personal property of DZS designated by Purchaser in its sole and absolute discretion for assumption and assignment pursuant to the BANKRUPTCY CODE ("**Assigned Personal Property Leases**", and collectively with the Assigned Contracts, the Assigned Licensed IP, and the Assigned Real Property Leases, the "**Assigned Material Agreements**");

(vi) all rights to any and all avoidance actions of DZS currently held by the Trustee (1) related to the Assigned Contracts or (2) of customers or vendors of DZS which are related to the Purchased Assets, are agreed to by the Parties, and are set forth on a schedule to the Acquisition Agreement;

(vii) DZS' rights under warranties, indemnities and all similar rights against third parties to the extent related to any Purchased Assets;

(viii)     originals, or where not available, copies, of all books and records that substantially relate to the Purchased Assets or Assigned Material Agreements, including books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer purchasing histories, price lists, distribution lists, supplier and customer lists and related information, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any governmental authority), sales material and records, strategic plans, internal financial statements and marketing and promotional surveys, material and research;

(ix)     all accounts receivable of DZS, but only to the extent that such accounts receivable are unpaid and outstanding on the Closing Date (as defined below);

(x)     all prepaid expenses and deposits of DZS, to the extent that they relate to Assigned Material Agreements;

(xi)     all inventory of DZS (including, without limitation, all finished goods, work in progress, raw materials, component parts and other items customarily forming part of the inventory of DZS);

(xii)     all permits, authorizations, and licenses of DZS;

(xiii)     all equipment, vehicles, machinery, fixtures, tools, furniture, furnishings, office supplies, information technology assets and all other items of tangible personal property of DZS;

    (xiv)    all rights of DZS to the Guaranteed Closing Payment (as defined in that certain Asset Purchase Agreement dated October 16, 2024 by and between DZS and AXON Networks, Inc.;

    (xv)    the goodwill of DZS, including all right, title and interest of DZS in, to and in respect of all elements which contribute to the goodwill of DZS, including the goodwill represented by packaging, labelling, advertising, marketing and promotional materials and the right to use the name "DZS"; and

    (xvi)    all other assets determined by the Purchaser and included in the Acquisition Agreement including, without limitation, an option to acquire equity interests in foreign subsidiaries.

11.    There are numerous excluded Assets which include the cash, bank accounts and cash equivalents held by the Trustee, all avoidance actions which are not being purchased by the Purchaser, the director and officer insurance as well as any director and officer claims. A list of the Excluded Assets is more specifically set forth in the LOI, and includes the following:

    (i)    all cash and cash equivalents held by DZS and bank accounts in the name of DZS;

    (ii)    all securities and investments held by or for the benefit of DZS;

    (iii)    all rights to any and all avoidance actions and/or claims of DZS currently held by the Trustee, but specifically excluding any such rights set forth in Section 2(a)(vi) above;

    (iv)    all rights in connection with *Perficient, Inc. v. DZS, Inc*. in the United States District Court for the Eastern District of Texas, Sherman Division (Case 4:22-CV-00801-SDJ);

  (v)  any claims (or potential claims) or causes of action brought by the Trustee which are not related to the Purchased Assets including, but not limited to, any claims or causes of action against EdgeCo, LLC;

  (vi)  all prepaid insurance and all directors' and officers' policies and any related claims;

  (vii)  all assets of DZS designated by the Purchaser as Excluded Assets pursuant to the Acquisition Agreement; and

  (viii)  all other assets of DZS not included in the definition of Purchased Assets, assignment of the agreements of material third party contract manufacturers and entry of a final order.

12.  The sale of the Assets, pursuant hereto, will be free and clear of liens, claims and encumbrances pursuant to Section 363(f) of the BANKRUPTCY CODE and will be subject to the approval of the Bankruptcy Court and the consideration of higher or better offers. The Trustee is selling the Assets on an "as is, where is" and "with all faults" basis with no representations or warranties of any kind, nature or description by the Trustee, her agents, or the Debtor's Estate. The consummation of the sale is subject to the execution of a mutually acceptable APA, completion of the due diligence to the satisfaction of the Purchaser, assignment of the owned intellectual property of the Debtor, assignment of the agreement of material third party agreements on terms and conditions acceptable to the Purchaser and entry of a sale order approving the sale and the assumption and assignment of the contract to the Purchaser. **The Motion also provides for the assumption and assignment of contracts designated by the Purchaser. To the extent that the Purchaser is seeking an assumption and assignment of contracts, a separate notice with the cure amount will be sent to**

**the contract counterparty with either an agreed amount for cure or an opportunity to object to the cure amount.**

13. The proposed sale is subject to the following Milestones or such other dates as the Parties shall agree in writing, with respect to the Proposed Transaction:

    (i)      filing of with the Bankruptcy Court, in form and substance acceptable to Purchaser in its reasonable discretion, seeking approval of the Proposed Transaction, on or before April 4, 2025;

    (ii)      entering into the definitive Acquisition Agreement and filing notice with the Bankruptcy Court, in form and substance acceptable to Purchaser in its reasonable discretion, seeking approval of the Acquisition Agreement on or before April 21, 2025;

    (iii)      entry of an order or orders of the Bankruptcy Court, in form and substance acceptable to Purchaser in its reasonable discretion, approving the Proposed Transaction including, without limitation, assignment of the Assigned Material Agreements (the "**Sale Order**") prior to April 29, 2025; and

    (iv)      closing on the Proposed Transaction by no later than April 30, 2025 (the "**Outside Date**").

### III.

### SALE MOTION

14. The Trustee seeks approval of the sale, and requests that the Court authorize her to sell the Estates' right, title and interest in the Assets described therein, free and clear of liens, claims and encumbrances, and on an "as is, where is" and "with all faults" basis, without any representations or warranties of any kind, nature, or description by the Trustee, her agents, or the Estates to the Purchaser

or to a higher bidder. Section 363 of the BANKRUPTCY CODE permits the Trustee to sell property of the Estate, and Section 363(f) permits the Trustee to sell property of the Estate free and clear of any interest in the property, including liens, claims and encumbrances. The Purchaser should be afforded the protections under Section 363(m) of the BANKRUPTCY CODE as a good faith purchaser. The Trustee seeks approval to execute any documents to effectuate the sale or assume and assign executory contracts and leases or pay any amounts including cure amounts, taxes or commission that may be required to be paid at Closing.

15. The Trustee believes, in her business judgment, that a sale to Purchaser subject to a higher and better offer from another potential bidder, on the terms set forth in the APA, would provide the maximum benefit to the Estates.

**A.    The Sale is An Exercise of Sound Business Judgment and Should be Approved.**

16. BANKRUPTCY CODE § 363(b)(1) provides that "[t]he trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). "A sale of assets under § 363, as implemented by rule 6004, requires notice and a hearing and is subject to court approval and must be supported by an articulated business justification, good business judgment, or sound business reasons." *Cadle Company v. Mims (In re Moore)*, 608 F.3d 253, 263 (5th Cir. 2010). In reviewing a proposed sale of assets, a bankruptcy court should give deference to the sound business judgment of the trustee. *See Institutional Creditors of Cont'l Air Lines Inc. v. Cont'l Air Lines Inc. (In re Cont'l Air Lines Inc.),* 780 F.2d 1223, 1226 (5th Cir. 1986). The "business justification" standard is not formidable. A trustee can satisfy the business justification standard by showing that a proposed use of property "appears to enhance the debtor's estate" and is not "clearly erroneous, too speculative, or contrary to provisions of the BANKRUPTCY CODE." *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985).

17. The Trustee has determined, in the sound exercise of her business judgment, that the sale of the Assets is beneficial to the Estate and its creditors. The Trustee further believes that this Motion will culminate in a fair price for the Assets and will result in the highest recovery for the Assets. Therefore, the proposed sale is a reasonable exercise of the Trustee's sound business judgment

**B.     The Sale of the Assets Will be Free and Clear of Liens, Claims, and Encumbrances.**

18. Pursuant to BANKRUPTCY CODE § 363(f), a trustee may sell property free and clear of all liens, claims and encumbrances if: (i) applicable non-bankruptcy law permits the sale of such property free and clear of such interest; (ii) the lienholder or claimholder consents; (iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (iv) such interest is in bona fide dispute; or (v) the lienholder could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. *See* 11 U.S.C. § 363(f). These five conditions are written in the disjunctive, permitting the sale of estate assets upon the satisfaction of any one of the five conditions, including consent of the lienholders. *See In re Taxi Holders, Inc.*, 307 B.R. 525, 528-29 (Bankr. E.D. Va. 2004); *see also In re Mirant Corp.*, 2005 WL 1000266, at *5 (N.D. Tex. Apr. 14, 2005) (noting that "one or more of the standards set forth in Section 363(f)" must be satisfied).

19. With regard to the sale of the Assets, the Trustee believes that at least one of the tests in Section 363(f) is satisfied. In particular, the Trustee believes that Section 363(f)(2) is met because no party has asserted a lien every Asset to be sold. Alternatively, parties holding liens, if any, on the Assets may or will consent, or absent any objection to the Motion be deemed to have consented, to the sale of the Assets and the Purchase Price is in excess of the amount of the liens. Accordingly, Section 363(f) authorizes the sale and transfer of the Assets described herein free and clear of any liens, claims, encumbrances and interests with any valid liens to attach to the proceeds of the sale.

### C. The APA Was Negotiated at Arm's Length and in Good Faith.

20. BANKRUPTCY CODE § 363(m) states, in relevant part:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.
> *See* 11 U.S.C. § 363(m).

21. Section 363(m) of the BANKRUPTCY CODE "patently protects, from later modification on appeal, an authorized sale where the purchaser has acted in good faith and the sale was not stayed pending appeal." *In re Butan Valley, N.V.*, (slip op.), 2009 WL 6509349, at *4 (S.D. Tex. Sept. 11, 2009) (quoting *Matter of Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990)). Where a commercially sophisticated seller and purchaser have negotiated a sale at arms-length, they have acted in good faith within the contemplation of BANKRUPTCY CODE § 363(m) and are entitled to the protections of that provision. *See In re Beach Dev., L.P.*, (slip op.), 2009 WL 3246771, at *3 (Bankr. S.D. Tex. Oct. 5, 2009).

22. The agreement for the sale of the Assets was negotiated, proposed, and entered into by the parties without collusion, in good faith, and from an arm's-length bargaining position. Neither the Trustee, the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the agreement for the sale of the Assets, or the transaction contemplated thereby, to be invalidated or avoided under 11 U.S.C. § 363(n). As such, the Trustee believes the Purchaser constitutes a "good faith" purchaser within the meaning of BANKRUPTCY CODE § 363(m) and should be fully entitled to the protections thereof. Accordingly, the Trustee requests findings and protections pursuant to BANKRUPTCY CODE § 363(m).

---

**D.     Cause Exists to Eliminate any Stay Imposed by the BANKRUPTCY CODE.**

23.     Bankruptcy Rule 6004(h) states "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." The Trustee requests that any Order entered authorizing a transaction that is deemed a sale of the Assets be effective immediately, thereby waiving the 14-day stay imposed by Bankruptcy Rule 6004. This waiver of the 14-day stay is necessary for the sale to close expeditiously, to provide employment for former employees, to give assurances to customers and suppliers and to facilitate the transfer of the Assets. Accordingly, the Trustee hereby requests that the Court eliminate the 14-day stay imposed by Bankruptcy Rule 6004.

24.     In the Trustee's business judgment, the sale of the Assets to Purchaser, subject to reasonable overbids, as set forth herein, is in the best interest of the Estates and their creditors and should be authorized by this Court. Pursuant to Section 363 of the BANKRUPTCY CODE, the Trustee requests that the Court approve the sale of the Assets to the Purchaser in exchange for the payment of the Purchase Price subject to higher and better offers as set forth herein. The Trustee seeks approval to execute any documents to effectuate the sale or assumed and assign executory contracts and leases or pay any amounts including cure amounts, taxes or commission that may be required to be paid at Closing. Concurrently herewith, the Trustee is filing a motion to retain Normandy Lane, LLC as a consultant. Such company is owned by Charles Vogt, the former CEO who has been assisting with the sale and if approved, will be compensated from the proceeds of the sale at closing.

25.     The offer for the Assets is subject to higher and better bids as determined by the Trustee or the Bankruptcy Court ("**Conforming Competing Bid**"). To the extent that the Trustee receives a proposal from a competing bidder that is a higher and better offer, the Purchaser shall have the right to provide a higher and better offer than the Conforming Competing Bid. The Bankruptcy Court shall have the sole authority to determine the ultimate highest and best bid. For avoidance of doubt, the

Purchaser shall have the right to seek approval from the Bankruptcy Court of any such bid and to object to other bids as not being higher and better. The Parties are responsible for and shall bear all of their respective costs and expenses (including any broker's or finder's fees and the expenses of their representatives) incurred in connection with the Proposed Transaction; *provided, however*, that if the Trustee and the Bankruptcy Court accept a higher and better Conforming Competing Bid in lieu of the Proposed Transaction, the Purchaser reserves the right to request the Bankruptcy Court to reimburse Purchaser's actual legal expenses in an amount not to exceed $750,000.00 incurred in pursuit of the Proposed Transaction and the Trustee reserves all rights thereto.

## IV.

## NOTICE

26. Notice of this Motion is provided pursuant to Rules 6004(a), 9007(a) and 9014 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE. This notice is being served on all creditors and parties-in-interest. Under the circumstances, the Trustee submits that such notice is adequate and appropriate.

27. The Trustee has herein requested that any Order approving this Motion to Sell exclude the 14-day stay provided in Rule 6004(h) of the FEDERAL RULES OF BANKRUPTCY PROCEDURE.

## V.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Michelle H. Chow, Chapter 7 Trustee, prays that the Court authorize the Trustee to establish bidding procedures for the sale of the Assets, schedule an Auction and a hearing date to sell the Assets to the highest bidder on an "as is, where is" and "with all faults" basis, without any representations or warranties of any kind, nature, or description by the Trustee, her agents, or the Debtor's Estate; authorize the Trustee to execute any documentation

required to sell the Assets; pay any amounts which may be required at Closing and for such other and further relief as she may show herself justly entitled.

**DATED: April 4, 2025**

        Respectfully submitted,

        SINGER & LEVICK, P.C.

        By:    /s/ *Michelle E. Shriro*
              Larry A. Levick
              State Bar No. 12252600
              Michelle E. Shriro
              State Bar No. 18310900
              Todd A. Hoodenpyle
              State Bar No. 00798265

        16200 Addison Road, Suite 140
        Addison, Texas 75001
        Phone: 972.380.5533
        Fax: 972.380.5748
        Email: levick@singerlevick.com
        Email: mshriro@singerlevick.com
        Email: hoodenpyle@singerlevick.com

        GENERAL COUNSEL FOR
        MICHELLE H. CHOW, CHAPTER 7 TRUSTEE

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing document has been electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District, which includes the parties as shown below; that a true and correct copy of the foregoing document has been served upon Purchaser's counsel via electronic mail; and that a copy of the Motion **only** has been served to the parties shown on the attached Service List via first class mail, postage prepaid, on this 4th day of April, 2025.  Any party on the Service List receiving only the Motion may request a copy of the Exhibit as discussed in the Motion from the undersigned counsel.

| **DEBTOR:**<br>DZS Inc.<br>5700 Tennyson Parkway, Suite 400<br>Plano, TX 75024<br>**VIA ECF Noticing through its attorney** | **ATTORNEY FOR DEBTOR:**<br>Travis A. McRoberts<br>Baker Botts L.L.P.<br>2001 Ross Avenue, Suite 900<br>Dallas, TX 75201-1980<br>**VIA ECF Noticing** |
|---|---|
| **COUNSEL FOR PURCHASER:**<br>Deborah D. Williamson<br>Dykema<br>112 E. Pecan Street, Suite 1800<br>San Antonio, TX 78205<br>**VIA EMAIL: dwilliamson@dykema.com** | **COUNSEL FOR EDGECO, LLC:**<br>R. Adam Swick<br>Ackerman LLP<br>500 West 5th Street, Suite 1210<br>Austin, TX 78701<br>**VIA EMAIL: adam.swick@akerman.com** |
| **TRUSTEE:**<br>Michelle H. Chow<br>16200 Addison Road, Suite 140<br>Addison, TX 75001<br>**VIA ECF Noticing** | **US TRUSTEE:**<br>Office of the US Trustee<br>110 N. College Ave., Suite 300<br>Tyler, Texas 75702<br>**VIA ECF Noticing** |

                                        /s/ *Michelle E. Shriro*
                                        Michelle E. Shriro