**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | (Chapter 7) |
| | § | |
| DZS INC.,[1] | § | Case No. 25-40712 |
| | § | |
| DEBTOR. | § | |

**JOINT MOTION OF MISTY KAWECKI AND CHARLES VOGT FOR
(I) ENTRY OF AN ORDER MODIFYING THE AUTOMATIC STAY,
TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT,
REIMBURSEMENT, AND/OR ADVANCEMENT OF DEFENSE
COSTS UNDER INSURANCE POLICIES
AND (II) GRANTING RELATED RELIEF**

> **Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**
>
> **No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

Misty Kawecki ("Kawecki") and Charles Vogt ("Vogt", and together with Kawecki, the "Movants"), the former chief financial officer and chief executive officer, respectively, of DZS, Inc. (collectively, with its debtor-affiliates, the "Debtors") file this *Joint Motion for (I) Entry of an Order Modifying the Automatic Stay, to the Extent Applicable, to Allow Payment, Reimbursement,*

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's Federal Tax Identification Number, include: DZS Inc. (9099), DZS Services Inc. (3763) and DZS California Inc. (3221). The location of the Debtors' service address is 5700 Tennyson Parkway, Suite 400, Plano, TX 75024.

*and/or Advancement of Defense Costs Under Insurance Policies and (II) Granting Related Relief*

(the "Motion"):

## I.  Preliminary Statement

1.  Movants are the former CEO and CFO of the Debtors and are Insured Persons under prepetition directors' and officers' insurance and related corporate liability policies (collectively, the "D&O Policies" or the "Policies").[2] Movants have claims against the insurance companies providing such D&O Policies (collectively, the "Insurance Providers") relating to:

a.  A securities class action lawsuit - *In re DZS, Inc. Securities Litigation*, 4:23-cv-549-SDJ, pending in the United States District Court for the Eastern District of Texas (June 14, 2023) (the "Securities Class Action");[3]

b.  Responding in connection with regulatory inquiries and investigations related to the Debtors (the "Regulatory Inquiries");[4] and

c.  A currently-stayed derivative suit - *Chirag Mody, Derivatively on Behalf of DZS, Inc. v. Charles D. Vogt, Matt Bross, Joon Kyung Kim, Barbara Carbone, Choon Yul Yoo, David R. Schopp, Min Woo Nam, Defendants and Misty Kawecki and DZS, Inc., Nominal Defendant*, 4:24-cv-917-ALM, pending in the United States District Court for the Eastern District of Texas (October 15, 2024) (the "Derivative Suit", and together with the Regulatory Inquiries and the Securities Class Action, the "Prepetition Litigation", and the claims relating to such litigation, the "Insurance Claims").

2.  Notwithstanding the rights of Movants with respect of the D&O Policies, the Insurance Providers have requested that the Movants seek entry of the Proposed Order (as

---

[2] The D&O Policies are more fully described below.  Notably, as discussed below, the Policies contain a "Priority of Payment" clause giving priority to the payment of any Loss (as defined in the D&O Policies) arising from a covered claim against individual insureds over the payment of any Loss arising from a covered claim against the Debtors.  Due to the voluminous nature of the D&O Insurance Policies, Counsel for Movants is not attaching such policies to this Motion.  However, with appropriate confidentiality protections, Counsel for Movants will provide copies of such policies to parties-in-interest upon request to Steven.Levitt@HKLaw.com.

[3] The Securities Class Action is not stayed, but the court has vacated the existing scheduling order and requested a status report on the applicability of the automatic stay by no later than June 9, 2025.

[4] As DZS Inc. disclosed in public filings prior to the Debtors' filing of their chapter 7 petitions, including in DZS Inc.'s Form 10-Q filed on November 12, 2024, "In light of the events giving rise to the restatement [of DZS's financial statements], DZS began cooperating, and intends to continue to cooperate, with the U.S. Securities and Exchange Commission (the "SEC")" relating to the investigation of same.

defined below) from this Court clarifying that either (a) the automatic stay does not apply to Movants' right to assert the Insurance Claims against the Insurance Providers, or (b) to the extent that the stay does apply, there is cause to modify the automatic stay to allow the Insurance Providers to honor any payment, advancement, or reimbursement obligations under the D&O Policies with respect to the Insurance Claims.

3.      Notably, Movants are seeking coverage under "**Side A**" of the D&O Policies.  The Fifth Circuit is clear that while directors and officers insurance ***policies*** may be property of the estate, the ***proceeds*** available to directors and officers under "Side A" of such policies are not property of the estate; therefore, the payment, advancement, or reimbursement of such ***proceeds*** does not violate the automatic stay.  *Homsy v. Floyd (In re Vitek, Inc.)*, 51 F.3d 530, 535 (5th Cir. 1995) (holding that to the extent a D&O Policy provides Side A coverage, "the proceeds of that D&O Policy are *not* part of the debtor's bankruptcy estate.") (emphasis in original).

4.      Even if the automatic stay were applicable, which it is not, cause would exist to modify the stay to grant the relief requested herein.  First, the Debtors' estates will not be harmed, and may benefit, from such relief.  In particular, the Debtors indemnified the Movants with respect to the Prepetition Litigation.  Therefore, the relief requested herein will utilize payments from the Insurance Providers to fulfill the Debtors' indemnification obligations without the need for the Debtors to come 'out-of-pocket' and pay such obligations in cash.[5]  Granting the relief requested will also allow Movants to meaningfully participate in the defense of certain claims and potential claims that have been asserted against both the Movants and the Debtors, to ensure that a subset of creditors does not obtain a claim, at the expense of other creditors, against the Debtors in excess of what they would reasonably obtain if Movants are able to assert their rights

---

[5] As Movants' defense costs are accruing post-petition, Movants reserve all rights to seek payment of such costs as administrative expenses of the Debtors' estates if such costs are not paid by the Insurance Providers.

under the D&O Policies.

5.      On the other hand, Movants would be substantially harmed if the relief requested is not granted.  It is axiomatic that the Debtors obtain no better rights through bankruptcy than they would have under a given contract outside of bankruptcy.  Here, there is a "Priority of Payment" provision in the D&O Policies that gives priority to the payment of any Loss arising from a covered claim against individual insureds over the payment of any Loss arising from a covered claim against the Debtors.  It would be patently unfair, and would expand the Debtors' rights in the D&O Policies, not to enforce this provision while the Debtors have no restrictions on their own use of the D&O Policies.  Thus, it would be burdensome and inequitable to prevent Movants from accessing the insurance proceeds that they relied upon when agreeing to work for the Debtors.

6.      Accordingly, Movants respectfully request that the Court grant the Motion.

## II.      Relief Requested

7.      The Movants seek entry of an order substantially in the form attached hereto (the "Proposed Order"): (a) modifying the automatic stay and authorizing the use of property of the Debtors' estates outside the ordinary course of business, in each case, to the extent applicable, with respect to proceeds of the D&O Policies to allow the Insurance Providers to pay, reimburse, and/or advance covered amounts of the Insured Persons under the D&O Policies relating to the Insurance Claims, including, without limitation, defense costs for the Prepetition Litigation; and (b) granting related relief.

## III. Jurisdiction and Venue

8.      The United States Bankruptcy Court for the Eastern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core

proceeding pursuant to 28 U.S.C. § 157(b). The Movants confirm their consent to the entry of a final order by the Court.

9.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.    The bases for the relief requested herein are sections 105(a), 362(d), and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 4001-1 of the Local Rules of Bankruptcy Procedure of the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Local Rules").

## III.     Background

11.    On March 14, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 7 of the Bankruptcy Code and commenced these chapter 7 cases (collectively, the "Chapter 7 Cases"). On April 14, 2025, the Court entered an order authorizing the joint administration of the Chapter 7 Cases. [Dkt. No. 68].

12.    On March 14, 2025, the Court appointed Michelle Chow as the chapter 7 trustee for the Debtors (the "Chapter 7 Trustee" or the "Trustee"). [Dkt. No. 4].

### A. The Debtors

13.    Prior to the Petition Date, DZS manufactured, sourced, and sold fiber access, optical telecommunications networking, and cloud software technology solutions within the United States and abroad including in Europe and Asia.

14.    Movant Kawecki is the former CFO of the Debtors. Movant Vogt is the former CEO of the Debtors. Movant Kawecki's employment was terminated prior to the Petition Date. Movant Vogt's employment has also terminated.

15.    Pursuant to Article VII of the Debtor's Restated Certificate of Incorporation,

the Debtors indemnified Movants (the "Indemnification Agreements").

**B. The Insurance Policies**

      16.    The Insurance Policies include:[6]

| Coverage Description | Insurance Carrier(s) | Policy No(s). | Policy Period |
|---|---|---|---|
| Primary D&O Policy | AIG (National Union Fire Insurance Company of Pittsburgh, Pa.) | 01-933-34-63 | 12/15/2022 – 12/15/2023 (extended through 12/15/2024 by Endorsement #77) |
| Excess D&O Policy ($5MM excess of $5MM) | Sompo International Insurance (Endurance American Insurance Company) | DOX30029398600 | 12/15/2022 – 12/15/2023 |
| Excess D&O Policy ($5MM excess of $10MM) | AmTrust North America (Wesco Insurance Company) | EUW1880126 02 | 12/15/2022 – 12/15/2023 |
| Excess D&O Policy ($5MM excess of $15MM) | ANV Global Services Inc. (Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc.) | ANV157127A | 12/15/2022 – 12/15/2023 |
| Side-A Edge Policy | AIG (National Union Fire Insurance Company of Pittsburgh, Pa.) | 01-933-34-68 | 12/15/2022 – 12/15/2023 (extended through 12/15/2024 by Endorsement #9) |
| Excess Side A D&O | Berkley Insurance Company (Gemini Insurance Company) | BPRO8088009 | 12/15/2022 – 12/15/2023 |

---

[6] There may be other insurance policies applicable to Movants.  Movants reserve the right to expand this list as necessary.

| Coverage Description | Insurance Carrier(s) | Policy No(s). | Policy Period |
|---|---|---|---|
| Policy ($5MM excess of $25MM) | | | |
| Primary Executive Edge Policy | AIG (National Union Fire Insurance Company of Pittsburgh, Pa.) | 02-571-40-62 (replacement of 01-933-34-63) | 12/15/2024 – 12/15/2025 |
| Excess Executive Policy ($5MM excess of $5MM) | Sompo International Insurance (Endurance American Insurance Company) | DOX30029398601 (prior policy no. DOX30029398600) | 12/15/2024 – 12/15/2025 |
| Excess Executive Policy ($5MM excess of $10MM) | AmTrust North America (Wesco Insurance Company) | EUW1880126 03 | 12/15/2024 – 12/15/2025 |
| Excess Executive Policy ($5MM excess of $15MM) | ANV Global Services Inc. (Amtrust Underwriters, Inc. on behalf of Associated Industries Insurance Company, Inc.) | ANV157127A (renewal of ANV157127A) | 12/15/2024 – 12/15/2025 |
| Side-A Edge Executive Policy | AIG (National Union Fire Insurance Company of Pittsburgh, Pa.) | 02-613-83-27 (replacement of 01-933-34-68) | 12/15/2024 – 12/15/2025 |
| Excess Side A Executive Policy ($5MM excess of $25MM) | Berkley Insurance Company (Gemini Insurance Company) | BPRO8118405 | 12/15/2024 – 12/15/2025 |

17.    The D&O Policies are subject to a "Priority of Payment" provision ("Priority of Payment Provision"), which provides that the:

In the event of Loss arising from a covered Claim(s) and/or Pre-Claim Inquiry(ies)

for which payment is due under the provisions of this policy, the Insurer shall in all events:

> (1) First, pay all Loss covered under Insuring Agreement A. *Insured Person Coverage*;
>
> (2) Second, only after payment of Loss has been made pursuant to subparagraph (1) above and to the extent that any amount of the Limit of Liability shall remain available, pay Loss covered under Insuring Agreement B. *Indemnification of Insured Person Coverage*; and
>
> (3) Lastly, only after payment of Loss has been made pursuant to subparagraphs (1) and (2) above and to the extent that any amount of the Limit of Liability shall remain available, pay Loss covered under Insuring Agreement C. *Organization Coverage* and Insuring Agreement D. *Crisisfund Coverage*.[7]

18.     As noted above, Movants have claims against the Insurance Providers relating to the Prepetition Litigation.

## IV.     Applicable Authority

### A.  The Proceeds of "Side A" D&O Policies are Not Property of the Estate and are Not Subject to the Automatic Stay

19.     The Fifth Circuit has made a key distinction between directors and officers insurance **_policies_**, and the **_proceeds_** of "Side A" of such policies.  While directors and officers insurance **_policies_** may be property of the estate, the **_proceeds_** of the "Side A" coverage under such policies are not.  See *Vitek*, 51 F.3d at 535 ("[W]hen a debtor corporation owns a liability policy that *exclusively* covers its directors and officers . . . the proceeds of that D&O policy are *not* part of the debtor's bankruptcy estate.") (emphasis in original); *see also In re La. World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987) ("There are a great many bankruptcy cases holding that liability insurance *policies* that provide coverage for the bankrupt's liability belong to the bankrupt's estate . . . . However . . . [t]he question is not who owns the policies,

---

[7] AIG Primary D&O Policy, Policy Number 01-933-34-63, at Clause 3.B (as amended by Endorsement #49).

but who owns the liability proceeds.") (emphasis in original).

20.     Accordingly, the proceeds of the "Side A" coverage under the D&O Policies are not property of the Debtors' estates, and the automatic stay therefore does not apply to the Insurance Claims or the Insurance Providers' obligation to honor any payment, advancement, or reimbursement obligations under the D&O Policies with respect to the Insurance Claims of the Movants.

**B. Even if the Automatic Stay Were Applicable, Which it is Not, Cause Exists to Modify the Stay to Grant the Relief Requested**

21.     Even assuming arguendo that the automatic stay does otherwise apply, which it does not, "cause" would exist under Section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow payment, reimbursement and/or advancement of defense costs for Movants under the D&O Policies.  Section 362(d)(1) of the Bankruptcy Code provides, in relevant part, that "on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section . . . for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1).

22.     "Cause" is not defined in the Bankruptcy Code, but rather is determined on a case-by-case basis. *See In re Reitnauer*, 152 F.3d 341, 343 n. 4 (5th Cir. 1998); *In re Mendoza*, 111 F.3d 1264, 1271 (5th Cir. 1997); *In re Xenon Anesthesia of Tex., PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014). "The Bankruptcy Code gives the court broad discretion to provide appropriate relief from the automatic stay as may fit the facts of a particular case." *Xenon Anesthesia*, 510 B.R. at 112.

23.     To determine whether cause exists, courts may balance the hardships of all the parties involved, weighing the degree of hardship to each party in light of the goals of the

Bankruptcy Code, and cause exists when failure to lift the stay harms the creditor and will not unjustly harm the debtor or other creditors. *In re 1776 Am. Props. IV, LLC*, No. 17-30422, 2017 WL 1956851 at *2 (Bankr. S.D. Tex. May 10, 2017) (*citing In re Northtown Mall Assocs.*, 1993 WL 346867, at *4 (5th Cir. 1993) (unpublished table decision)).

24.     Here, the Debtors' estates will not be harmed, and may benefit, from the relief requested herein.  In particular, the Debtors indemnified the Movants with respect to the Prepetition Litigation.  Therefore, the relief requested herein will utilize payments from the Insurance Providers to fulfill the Debtors' indemnification obligations without the need for the Debtors to come 'out-of-pocket' and pay such obligations in cash.[8]  Granting the relief requested will also allow Movants to meaningfully participate in the defense of certain claims and potential claims that have been asserted against both the Movants and the Debtors, to ensure that a subset of creditors does not obtain a claim, at the expense of other creditors, against the Debtors in excess of what they would reasonably obtain if Movants are able to assert their rights under the D&O Policies.

25.     On the other hand, Movants would be substantially harmed if the relief requested is not granted.  It is axiomatic that the Debtors obtain no better rights through bankruptcy than they would have under a given contract outside of bankruptcy. *See Butner v. United States*, 440 U.S. 48, 55 (1979) ("Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").  Thus, the Debtors did not have any interest in the "Side A" policy proceeds prior to the Petition Date, and to find that they have an interest in such proceeds now would be to expand their rights in the D&O Policies beyond

---

[8] As Movants' defense costs are accruing post-petition, Movants reserve all rights to seek payment of such costs as administrative expenses of the Debtors' estates if such costs are not paid by the Insurance Providers.

what they had prior to the Petition Date.

26.    Additionally, the Priority of Payment Provision in the D&O Policies gives priority to the payment of any Loss arising from a covered claim against individual insureds over the payment of any Loss arising from a covered claim against the Debtors.[9]  It would be patently unfair, and would expand the Debtors' rights in the D&O Policies beyond their prepetition rights, not to enforce this provision while the Debtors have no restrictions on their own use of the D&O Policies.  *See In re Downey Fin. Corp.*, 428 B.R. 595, 608 (Bankr. D. Del. 2010) ("were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [proceeds] than the debtor had before filing for bankruptcy.'") (citation omitted); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (priority of payment provision in favor of individual non-debtor insureds fully enforceable in bankruptcy).

27.    And while certain of the Prepetition Litigation has been temporarily stayed, the Regulatory Inquiries are not.[10]  It would substantially harm the Movants to be required to come out of pocket to cover their defense costs when they relied in good faith on the existence of insurance to cover such costs.  Indeed, it would chill the market, and be against public policy, to interfere with directors' and officers' ability to access D&O policies in situations like bankruptcy where they are most likely to need them.  Movants relied upon the availability of insurance coverage when agreeing to work for the Debtors.

28.    Finally, the Debtors cannot provide adequate protection to the Movants to

---

[9] AIG Primary D&O Policy, Policy Number 01-933-34-63, at Clause 3.B (as amended by Endorsement #49).

[10] While certain of the Prepetition Litigation has been stayed, and Movants expect de minimis costs to be incurred while such litigation is stayed, Movants seek authority to obtain reimbursement for defense costs incurred prior to such stay, as well as prospective permission to seek payment or advancement of such costs in the event that the stay is lifted on such Prepetition Litigation.

protect them from such harm.[11]  Accordingly, even if the automatic stay applies to the "Side A" proceeds, which it does not, cause exists to modify the stay to grant the Motion.

**V.**     **Notice**

29.     Notice of the hearing on the relief requested in this Motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rule 4001 and Bankruptcy Local Rule 4001-1.

**DATED:** May 8, 2025

Respectfully submitted,

By: _/s/ Steven J. Levitt_
Steven J. Levitt
Texas Bar No. 24092690
Christopher A. Bailey
Texas Bar No. 24104598
HOLLAND & KNIGHT LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Telephone: 214.969.1700
E-Mail: steven.levitt@hklaw.com
         chris.bailey@hklaw.com

**ATTORNEYS FOR MISTY KAWECKI**

and

By: _/s/ Judith W. Ross_
Judith W. Ross
Texas Bar No. 210670
ROSS & SMITH, PC
700 North Pearl St.  Ste 1610
Dallas, Texas 75201
Telephone: 214.732-9743
E-Mail:  Judith.ross@ross-and-smith.com

**ATTORNEY FOR CHARLES VOGT**

---

[11] Additionally, as noted above, the Debtors lack "equity" in the "Side A" proceeds and such proceeds are not "necessary to an effective reorganization" because the Debtors are in Chapter 7 and are not reorganizing.  Thus, cause would exist under section 362(d)(2) as well.

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2025, a true and correct copy of the foregoing has been served on all parties entitled to service via this Court's electronic filing system ("ECF").

*/s/ Steven J. Levitt*
Steven J. Levitt

## CERTIFICATE OF CONFERENCE

I hereby certify that on multiple occasions, including by phone call on April 22, 2025, and an email on April 22, 2025, I conferred and corresponded with Counsel for the Trustee regarding the relief requested herein.  Additionally, on May 7, 2025, I attempted to call Counsel for the Trustee about the filing of this motion, but was unable to speak with him.  I then emailed him about same.  To date, the Trustee has not consented to such relief.

*/s/ Judith W. Ross*
Judith W. Ross

**Exhibit A**