# FIRST INTERIM FEE APPLICATION COVER SHEET

First Interim Fee Application of : **SINGER & LEVICK, P.C.**

Capacity: **COUNSEL FOR THE CHAPTER 7 TRUSTEE**

Time Period: March 16, 2025 through August 31, 2025

Bankruptcy Petition Filed on: March 15, 2025

Date of Entry of Retention Order: April 3, 2025 (**Dkt.021**)

Status of Case: Ongoing

| Amounts Requested | | Reductions | |
|---|---|---|---|
| Fees | $ 454,922.00 | Voluntary Fee Reductions | $ 0.00 |
| Expenses | $ 41,850.55 | Expense Reductions | $ 0.00 |
| Other | $ 0.00 | Total Reductions | $ 0.00 |
| Total | $ 496,772.55 | | |

| Draw Down Request | | Expense Detail | |
|---|---|---|---|
| Retainer Received | $ 0.00 | Filing Fees | $ 199.00 |
| Previous Draw Down(s) | $ 0.00 | Computer Research | $ 8,658.12 |
| Remaining Retainer (now) | $ 0.00 | Mailout Service | $ 32,964.31 |
| Requested Draw Down | $ 0.00 | Delivery Fees | $ 29.12 |
| Retainer Remaining (after) | $ 0.00 | | |

| Hourly Rates | Attorney / Accountant | Paralegal / Clerical |
|---|---|---|
| Highest Billed Rate | $ 540.00 | $ 295.00 |
| Total Hours Billed | 890.20 | 57.40 |
| Blended Rate | $ 492.01 | $ 295.00 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 25-40712 |
| | § | |
| DZS INC. ,[1] | § | Chapter 7 |
| | § | |
| DEBTORS. | § | (Jointly Administered) |

**FIRST INTERIM APPLICATION OF SINGER & LEVICK, P.C., COUNSEL TO THE TRUSTEE, FOR ALLOWANCE OF COMPENSATION OF FEES AND REIMBURSEMENT OF EXPENSES INCURRED IN CONNECTION WITH DEBTOR DZS INC. FROM MARCH 16, 2025 THROUGH AUGUST 31, 2025**

> **YOUR RIGHTS MAY BE AFFECTED BY THE RELIEF SOUGHT IN THIS PLEADING. YOU SHOULD READ THIS PLEADING CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY, IF YOU HAVE ONE IN THIS BANKRUPTCY CASE. IF YOU OPPOSE THE RELIEF SOUGHT BY THIS PLEADING, YOU MUST FILE A WRITTEN OBJECTION, EXPLAINING THE FACTUAL AND/OR LEGAL BASIS FOR OPPOSING THE RELIEF.**
>
> **NO HEARING WILL BE CONDUCTED ON THIS PLEADING UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE SHOWN IN THE CERTIFICATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION.**
>
> **IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT.**
>
> **IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING WITH APPROPRIATE NOTICE. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

---

[1] The Debtors in these Chapter 7 cases, along with the last four digits of each Debtor's Federal Tax Identification Number, include: DZS Inc. (9099), DZS Services Inc. (3763) and DZS California Inc. (3221). The location of the Debtors' service address is: 5700 Tennyson Parkway, Suite 400, Plano, TX 75024.

**COMES NOW** Singer & Levick, P.C. ("**Applicant**"), Counsel for Michelle H. Chow, Chapter 7 Trustee, and files this *First Interim Application of Singer & Levick, P.C., Counsel to the Trustee, for Allowance of Compensation of Fees and Reimbursement of Expenses Incurred in Connection with Debtor DZS Inc. From March 16, 2025 Through August 31, 2025*("**Application**") and, in support thereof, would respectfully show the Court the following:

## I.
## JURISDICTION; VENUE; STATUTORY BASIS FOR RELIEF

1. This Court has jurisdiction over this Application and any hearings or orders entered pursuant to 28 U.S.C. § 157 and § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §1408 and §1409. The relief sought in this Application is based upon 11 U.S.C. §§ 327, 328, 330, 331 and 1103 of Title 11 of the UNITED STATES CODE, and Rules 2014 and 2016 of the FEDERAL RULES OF BANKRUPTCY PROCEDURE.

## II.
## PREAMBLE

2. On March 15, 2025 ("**Petition Date**"), DZS Inc. ("**Debtor**") filed a voluntary Petition under Chapter 7 of Title 11 of the UNITED STATES BANKRUPTCY CODE ("**Bankruptcy Code**") commencing the above-captioned case ("**Bankruptcy Case**").

3. Michelle Chow is the duly appointed Chapter 7 Trustee ("**Trustee**") for the Estate of DZS Inc. ("**Estate**").

4. On March 17, 2025, the Trustee filed the *Application of Trustee for Employment of Singer & Levick, P.C. as Counsel for the Trustee* (**Dkt.006**) and, on April 3, 2025, this Court entered an *Order Granting Employment of Singer & Levick, P.C. as Counsel* (**Dkt.021**).

## III.
## TIME PERIOD COVERED IN THE INTERIM APPLICATION

5.  This is Applicant's First Interim Fee Application with respect to the fees and expenses to be allowed and awarded for services and expenses incurred by Applicant on behalf of the Trustee solely in connection with Debtor DZS Inc. for the period of March 16, 2025 through August 31, 2025 ("**Compensation Period**").

## IV.
## RELIEF REQUESTED

6.  By this Application, Applicant seeks an award of its interim compensation incurred solely in connection with Debtor DZS Inc. in the amount of **$454,922.00** for its professional fees and **$41,850.55** for its expenses. The total amount of fees and expenses for which approval is sought is **$496,772.55**. The Estate is currently holding **$6,246,758.40**.

## V.
## FACTUAL BACKGROUND AND WORK PERFORMED

7.  This Chapter 7 case was filed on March 15, 2025. Prior to the Petition Date, Debtor operated as a publicly traded U.S.-based telecommunications company that developed and supplied a variety of networking products, along with cloud-based services for networks. Debtor sold products to customers from around the globe. Debtor had worldwide assets consisting of inventory, equipment, receivables, customer contracts, patents, and other intellectual property (collectively, "**Assets**"), which the Debtor valued as having a significant worth of several million dollars. Debtor also had numerous subsidiaries, which are not in bankruptcy, around the world. This Bankruptcy Case is unusual for a Chapter 7 both in the size of the case and the complexity of the Assets.

8.  Applicant, working daily with the Trustee, quickly determined that while there were a number of interested buyers for the Assets, most of the interested buyers were dependent on a quick

sale so as to re-hire the terminated employees of the Debtor and to preserve vendor relationships with a goal of reopening the business of the Debtor in the same manner that it had operated prior to filing the Bankruptcy Case.

9. In order to accommodate a quick sale of the Assets (the proverbial "melting ice cream cone") at the highest interest value, Applicant and the Trustee decided that separate counsel would need to be hired to provide, in coordination with the Applicant, specialized services required to complete an expediated sale of Debtor's highly technical Assets to the ultimate buyer.

10. On April 7, 2025, the Trustee filed an *Application to Employ Grable Martin, PLLC as Special Counsel to the Trustee* ("**Special Counsel Application**") (**Dkt.040**) requesting that the Court authorize employment of Grable Martin PLLC ("**Special Counsel**") primarily to provide the specialized type of services required to complete a sale of the Assets at the highest value. In addition, Trustee engaged Special Counsel to provide services with regard to Debtor's ongoing status as a publicly traded entity, as well as to assist with various intellectual property matters. On April 25, 2025, the Court entered its *Order Approving Employment of Grable Martin PLLC as Special Counsel* (**Dkt.089**). Special Counsel was the logical choice since it had represented Debtor Pre-Petition and had great familiarity with the intricacies of Debtor's business. Applicant and Special Counsel, while working together, did their utmost to avoid any duplication of services.

11. Pre-Petition, as Debtor was unable to pay its obligations, a Chapter 11 was contemplated. However, when it could not find financing, Debtor filed for Chapter 7 relief. Because of the enormity of its assets and the urgency to preserve value for a potential buyer, the case was essentially a "de facto" Chapter 11. Any buyer needed to act fast so that it could hire back essential terminated employees and mend relationships with disgruntled vendors. Several prospective buyers initially appeared, as well as other purchasers who wanted to buy only selective assets. The Trustee,

upon advice of counsel, marketed assets together and one buyer appeared with more urgency and resources than the others. After "around-the-clock" negotiations, which resulted in the purchase price being raised, a Letter of Intent ("**LOI**") was executed and the *Trustee's Motion for an Order Approving Sale of Certain Property of the Estate Free and Clear of all Liens, Claims and Encumbrances and Assumption and Assignment of Executory Contracts and Leases* ("**Sale Motion**") (**Dkt.026**) was filed with the Asset Purchase Agreement and its attached Schedules still to be negotiated. It was "all hands on deck" as the issues were complex and extensive. Daily calls were held among the Seller team and often the Buyer team joined in to negotiate points and assign tasks. There were issues with vendors, customers, landlords, employees, etc. which had to be dealt with on a daily basis. The issues surrounding executory contracts and intellectual property were extremely complex. The Applicant and Trustee attended all calls and made daily decisions involving the proposed sale. By way of example, Applicant would have a Zoom meeting with the representatives of the Australian entity on a related bankruptcy and be deluged with inquiries from London, Europe or Saudi Arabia all in the same day.

12. In fact, the Australian subsidiary that was in its own insolvency proceeding, along with Dason Network Solutions, Inc. ("**Dasan**"), objected to the sale on the virtual eve of the hearing which required a vigorous response to deal with these objections. After an all-day process, the Court approved the sale and, on April 28, 2025, the Court entered its *Order Granting Trustee's Motion for an Order Approving Sale of Certain Property of the Estate Free and Clear of all Liens, Claims and Encumbrances and Assumption and Assignment of Executory Contracts and Leases* ("**Sale Order**") (**Dkt.112**), and the sale closed. The Estate received the $18 million, plus the benefit of millions more in cure payments being paid to executory contract holders from the Buyer.[2] Applicant successfully

---

[2] The sale process is further discussed in paragraph 25 below.

dealt with the Dasan issues that continued after the sale hearing. After paying the secured creditor EdgeCo, LLC ("**EdgeCo**") the negotiated amount of $11,770,000.00 on its principal claim initially, the Trustee netted $6.23 million dollars, of which $4.3 million dollars was set aside to deal with the remainder of the secured EdgeCo claim. Even after recently paying EdgeCo[3], the Trustee is holding $6,246,758.40. The settlement with EdgeCo benefited the Estate at least $2 million dollars from the funds set aside to pay the purported EdgeCo secured claim.

13. In addition to the sale, other issues arose which required Applicant's attention. Early in the case, Edgeco laid claim to the original $1,000,000.00 in the Estate's bank account. Applicant convinced Edgeco that its lien did not extend to those funds or any further funds that the Trustee recovered from Chase Bank.

14. After the "expedited" sale, the Trustee and Buyer continued to work through significant post-closing issues which is to be expected. These issues involved miscellaneous subsidiary issues, letters of credit, vendor and property tax issues, and preferences. Some of these issues are ongoing.

15. Applicant has also reached a settlement with Bowei Technology ("**Bowei**") which included a 60% reduction of its administrative claim and a $6,000,000.00 waiver of a general unsecured claim.

16. The Applicant also dealt with document preservation issues, an SEC investigation and its own inquiry into D & O claims and preferences. Applicant has assisted Trustee in the 401(k) termination with special counsel hired on that issue. Applicant resolved the Perficient lift stay, which resulted in a claim reduction from a creditor. Applicant continues to field inquiries from creditors and related parties worldwide.

---

[3] The heavily negotiated EdgeCo Settlement is described in detail in paragraph 27 below.

17. The Trustee is currently holding $6,246,758.40 in Debtor DZS Inc.'s Estate.

## VI.
## **COMPENSATION SOUGHT**

18. Applicant has devoted many hours of time, attention and effort to this case on behalf of the Trustee. All of the legal services performed by Applicant were requested by the Trustee, were necessary, and were rendered in the normal and usual course of these proceedings.

19. Applicant has rendered **947.60** hours of legal services in the representation of the Trustee solely in connection with DZS Inc. during the Compensation Period. Based on the nature of the services rendered, the time required, the value of the services to the Trustee in the administration of the Debtor's Estate, and the cost of comparable services other than in a case under the Bankruptcy Code, Applicant seeks compensation for these professional services in the amount of **$454,922.00** for the Compensation Period.

20. Applicant also seeks reimbursement of out-of-pocket expenses incurred solely in connection with DZS Inc. during the Compensation Period in the amount of **$41,850.55**.

21. The total amount of fees and expenses for which approval is sought is **$496,772.55**.

## VII.
## **PROJECT BILLING**

A. **Case Administration** -- (see pages 1 - 20 of Exhibit A)

22. Applicant's professionals have expended **179.80** hours in representing the Trustee solely in connection with DZS Inc. during the Compensation Period with respect to matters in this category in the amount of **$82.763.50**.

23. This category includes time spent in connection with miscellaneous administrative activities including communicating with creditors, vendors, employees, executory contract holders including landlords, and subsidiaries; preparing and filing Applications to Employ Applicant,

Special Counsel, as well as the accounting firm Lain Faulkner. This category also includes the initial efforts of the Applicant to get up to speed on this complex case, including reviewing the Schedules, initial discussions with Debtor's counsel and various former employees, as well as preparing for and participating in the Section 341 Creditors' Meeting. In addition, this category also includes time spent addressing the issues involving the termination of the 401k Plan, including preparing and working on the Application to Employ Special ERISA Counsel, Matt Borror, who is handling these issues. Finally, this category also includes the initial time spent dealing with the administrative claim of Bowei which was settled in a manner resulting in a significant reduction of that claim and a waiver of a $6 million dollar unsecured claim.

**B.    <u>Sale</u> -- (see pages 20 - 50 of Exhibit A)**

24.    Applicant has expended **469.50** hours in representing the Trustee solely in connection with DZS Inc. during the Compensation during the Compensation Period with respect to matters in this category in the amount of **$228,867.50**.

25.    This case involved a very complex sale transaction which needed to be closed in an extremely short time frame. The Court approved sale is discussed in more detail in paragraphs 9-14 above. This category includes the time spent working on the actual sale documents, including the LOI and the Asset Purchase Agreement and its attached Schedules, and the negotiations involved thereto, along with the bankruptcy pleadings including the Sale Motion and Sale Order, the Motion for an expedited hearing, various noticing issues concerning the sale, and the notices of assumption and cures. This category also includes time spent addressing sale objections, as well as assisting with an Application to obtain approval of payment of various sale expenses which needed to be paid. This category also includes the time spent in connection with the preparation and attendance at the hearing to employ Charles Vogt, the sale hearing and an additional hearing involving disputes with a vendor,

Dasan. There have been numerous post-closing issues and this category also includes the ongoing post-closing issues.

C.     **EdgeCo, LLC Matters** -- **(see pages 50 - 58 of Exhibit A)**

26.    Applicant has expended **235.70** hours in representing the Trustee solely in connection with DZS Inc. during the Compensation Period with respect to matters in this category in the amount of **$113,915.00**.

27.    This category includes the time addressing and eventually reaching a resolution with Debtor's lender, EdgeCo, which ultimately claimed to be owed in excess of $15.3 million dollars. After EdgeCo was paid its principal amount of $11,770, 858.75 when the sale closed with a full reservation of rights, an additional $4.3 million dollars was set aside pending resolution of EdgeCo's claims for prepayment premiums earned Pre- and/or Post-Postpetition, attorneys' fees accrued and in the future, late charges, default penalties, interest and default interest, many of which were disputed by the Trustee. EdgeCo's claims were more complicated than a typical lender due to the amount and complexity of the legal issues surrounding many of the charges claimed by EdgeCo and the numerous loans that occurred among the parties. These disputes were significant and extensive negotiations occurred over a four-month period involving conference calls, in person meetings and eventually a mediation conducted by former Bankruptcy Judge Harlin D. Hale (Ret.) and post-mediation activity. This category includes the time spent by the Applicant reviewing and analyzing EdgeCo's claims, analysis and review of case law concerning these claims and preparation of legal memorandum and responses to legal memorandum regarding the analysis of the EdgeCo's claims. Applicant also negotiated with EdgeCo both before and after mediation trying to reach a resolution and prepared for and participated in a pre-mediation and mediation to resolve the EdgeCo claims. Eventually a settlement was reached in which EdgeCo significantly reduced its claim which allowed the Estate to

retain $2 million dollars of the sale proceeds from the $4.3 million dollar funds that had been set aside to cover EdgeCo's potential secured claim.

**D.     Litigation.** -- **(see pages 58 - 65 of Exhibit A)**

28.    Applicant has expended **62.60** hours in representing the Trustee solely in connection with DZS Inc. during the Compensation Period with respect to matters in this category in the amount of **$29,376.00**.

29.    This category includes the time spent addressing various pending litigation matters including litigation filed by the SEC against various former officers of the Debtors and investigating D & O claims and preferences. This category also includes Applicant's efforts to preserve data and documents and to retain a firm to assist with imaging the data for use in future litigation. The Applicant also settled the Perficient litigation issues.

## VIII.
## FACTORS FOR COMPENSATION BY THE COURT

30.    Approval of compensation in a bankruptcy proceeding for a law firm employed as counsel for the Trustee such as Applicant is governed by 11 U.S.C. § 330. In relevant part, Section 330 provides that the Court may award a law firm employed under Section 327 of the Bankruptcy Code reasonable compensation for actual and necessary services rendered by the law firm and reimbursement for actual and necessary expenses. In determining the amount of reasonable compensation to be awarded, the Court is required to consider the nature, extent, and value of the service, taking into account all relevant factors including, but not limited to, the time spent on the services, the rates charged for the services, whether the services were necessary to the administration of or for the benefit of the Estate, whether the services were performed within a reasonable amount of time commensurate with the nature of the task and whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners

in other similar cases.  **Exhibit A** attached to this Application sets forth in detail all of the time for which compensation is sought by the attorneys and other professional staff, broken-down by task and project category.  It is submitted that Exhibit A will furnish the Court with a starting point for an analysis of what Applicant has done; who in the firm has done it; how much time was spent doing it; and what would be reasonable compensation for the services provided.

31. Pursuant to the decisions of the United States Court of Appeals for the Fifth Circuit in *In re Lawler*, 807 F.2d 1207 (5th Cir. 1987), *Cooler Liquor. Inc. v. Adolph Coors Co.*, 684 F.2d 1087 (5th Cir. 1982), *In re First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir. 1977), and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), Applicant requests that the Court consider the factors set forth below in determining the amount of compensation that is reasonable for Applicant's services in this case.

32. The following highlights, and the narrative entries on the attached Exhibit A, demonstrate the beneficial services rendered by Applicant for the Trustee for which compensation and reimbursement is appropriate.

**A.**     **Time and Labor Required.**

33. Applicant's attorneys and other professional staff have expended **947.60** hours in representing the Trustee solely in connection with DZS Inc. during the Compensation Period. Applicant's records of the time expended in the rendition of professional services for the Trustee, as well as for all of its other clients, consist of hand-written diary entries by individual attorneys and professional support staff which are then placed in computer records.  This time does not include the time expended by secretaries and other support staff.  All professionals involved in the rendering of services in this proceeding have made a deliberate effort to avoid any unnecessary duplication of work

and time expended. It is submitted that all of these services are reasonable, necessary, and that Applicant is entitled to reimbursement of its fees in the amount of **$454,922.00**.

B. **Expenses**.

34. It has been necessary for Applicant to incur certain out-of-pocket expenses in connection with its representation of the Trustee in connection with the DZS Inc. Bankruptcy Case. Careful records of these expenditures have been maintained, and the expenses incurred for the Compensation Period are also summarized in the attached Exhibit A. It is submitted that all of these expenses are reasonable, necessary, and that Applicant is entitled to reimbursement of expenses in the amount of **$41,850.55**.

C. **Novelty and Difficulty of Issues**.

35. The most challenging issues in this Bankruptcy Case have involved working on a very complex sale process which had to be done in a very rapid time frame. The international issues combined with the vast scope of the case has added to the complexity.

D. **Preclusion from other Employment**.

36. Applicant's representation of the Trustee has not precluded this firm from accepting representation of other entities nor from any other employment in other matters due to any types of conflicts or the time consumed in this bankruptcy proceeding.

E. **Customary Fees**.

37. Applicant is applying for compensation of fees that reflect its customary billing rates. The hourly rates charged for Applicant's attorneys are within the range of those customarily charged by other law firms of requisite skill and experience in the Eastern District of Texas. These rates are in accordance with Applicant's fees charged in other matters and are customary for a bankruptcy attorney of the billing attorney's experience and reputation.

F. **Fixed or Contingent Fees.**

38. The fees for Applicant's services are fixed fees based on the time spent in this case. At all times, however, Applicant's compensation has been contingent upon the availability of sufficient assets and funds in the Estate, and the ultimate determination of this Court. Applicant has worked for eight (8) months without any payment.

G. **Time Limitations Imposed by Client or other Circumstances.**

39. There was a time limitation imposed in that if the sale did not close quickly, all value would be lost.

H. **Results Obtained.**

40. Applicant has obtained very good results for the Estate in connection with the DZS Inc. Bankruptcy Case through the Compensation Period for this Application. Through Applicant's efforts, Applicant assisted the Trustee in a sale which resulted in $18 million dollars being brought into the Estate during the pendency of this Bankruptcy Case, plus many millions for cures being paid by the Buyer. Applicant also resolved the EdgeCo secured claim issue and the Bowei administrative claim issue which resulted in the waivers of $2 million dollars in potential secured claims and $6 million dollars in unsecured claims.

I. **Experience, Reputation and Ability.**

41. Applicant has represented all types of entities in liquidation and reorganization cases in the State of Texas and elsewhere throughout the nation, and enjoys a good reputation as experienced and capable bankruptcy counsel.

J. **The Undesirability of the Case.**

42. There were no difficult or complex matters involved in this case that would make this case undesirable for any law firm.

**K.     The Nature and Length of the Professional Relationship with Client.**

43.     Applicant's representation of the Trustee in the DZS Inc. Bankruptcy Case commenced on March 16, 2025 and continues through the present date.  Applicant was employed by the Trustee in this matter because of its knowledge in the field of bankruptcy and litigation.

**L.     Awards in Similar Cases.**

44.     Applicant further represents that the fees applied for are in conformity with fees allowed in similar proceedings for similar services rendered and results obtained.  Applicant respectfully requests that the Court take notice of the awards which have been made in similar proceedings of this size and complexity.

**M.     Summary.**

45.     These highlights, and the narrative entries on the attached Exhibit A, statements, demonstrate the beneficial services rendered by Applicant for the Trustee for which compensation and reimbursement is appropriate.

46.     Based on the criteria outlined in 11 U.S.C. § 330(a)(3), Applicant believes the professional fees requested are reasonable considering the nature and extent of the services provided.  It is submitted that, for the reasons more fully outlined above, the amounts sought are fair and reasonable compensation in light of all the circumstances.

**IX.**

**APPLICANT IS A "DISINTERESTED PERSON"
AND HOLDS NO ADVERSE INTEREST**

47.     All professional services for which allowance of compensation is requested were performed by Applicant on behalf of the Trustee and not on behalf of any other entity or person.  Applicant owns neither a claim against, nor an interest in, the Trustee, and no beneficial interest in the Trustee, directly or indirectly, has been acquired or transferred by Applicant or for

Applicant's benefit since the commencement of this Bankruptcy Case. Applicant represents no interest adverse to any interest of the Trustee with respect to matters upon which it is engaged, and Applicant is a "disinterested person" under Section 101(14) of the Bankruptcy Code.

48.  No agreement or understanding exists between Applicant and any other person or entity for sharing of compensation received or to be received for services rendered in connection with these proceedings, except that fees will be shared with other partners of Applicant as permitted by Bankruptcy Rule 2016 and Section 504 of the Bankruptcy Code.

# X.
# PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Applicant respectfully requests that this Court:

1. Approve this Application;

2. Approve, allow and award on an interim basis Applicant's professional fees incurred in connection with the DZS Inc. Bankruptcy Case in the amount **$454,922.00**;

3. Approve, allow and award on an interim basis Applicant's expenses fees incurred in connection with the DZS Inc. Bankruptcy Case in the amount of **$41,850.55**;

4. Approve and direct the Trustee to immediately pay to Applicant the sum of **$454,922.00** from the funds on hand of the Estate for its interim professional fees;

5. Approve and direct the Trustee to immediately pay to Applicant the sum of **$41,850.55** from the funds on hand of the Estate for its interim expenses; and, finally,

6. Grant to Applicant such other and further relief to which Applicant may show itself to be justly entitled.

**Dated: November 14, 2025**

Respectfully submitted,

SINGER & LEVICK, P.C.

By:   /s/ *Larry A. Levick*
     Larry A. Levick
     State Bar No. 12252600
     Michelle E. Shriro
     State Bar No. 18310900
     Todd A. Hoodenpyle
     State Bar No. 00798265

16200 Addison Road, Suite 140
Addison, Texas 75001
Phone: 972.380.5533
Fax: 972.380.5748
Email: levick@singerlevick.com
Email: mshriro@singerlevick.com
Email: hoodenpyle@singerlevick.com

GENERAL COUNSEL FOR
MICHELLE H. CHOW, CHAPTER 7 TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been electronically mailed to the parties that are registered or otherwise entitled to receive electronic notices in this case pursuant to the Electronic Filing Procedures in this District, which includes the parties as shown below, on this 14th day of November, 2025.

| **DEBTOR:**<br>DZS Inc.<br>5700 Tennyson Parkway, Suite 400<br>Plano, TX 75024<br>**VIA ECF Noticing through its attorney** | **ATTORNEY FOR DEBTOR:**<br>Travis A. McRoberts<br>Baker Botts L.L.P.<br>2001 Ross Avenue, Suite 900<br>Dallas, TX 75201-1980<br>**VIA ECF Noticing** |
|---|---|
| **TRUSTEE:**<br>Michelle H. Chow<br>16200 Addison Road, Suite 140<br>Addison, TX 75001<br>**VIA ECF Noticing** | **US TRUSTEE:**<br>Office of the US Trustee<br>110 N. College Ave., Suite 300<br>Tyler, Texas 75702<br>**VIA ECF Noticing** |

    /s/ *Larry A. Levick*
    Larry A. Levick